UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PAMELA SNYDER,

        Plaintiff,

    v.

BANK OF AMERICA, N.A., et al.,

        Defendants.

Case No.  15-cv-04228-EDL

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISIMSS**

## I.      Introduction

Plaintiff Pamela Snyder brings this complaint against Defendants Bank of America, N.A. ("B of A"), Deutsche Bank, and Nationstar Mortgage LLC ("Nationstar") challenging the actions these entities took in connection with a residential mortgage.  Plaintiff's First Amended Complaint ("FAC") asserts claims for:  (1) Fraud against B of A; (2) and (5) Negligent Misrepresentation against B of A; (3) and (4) Violation of California Civil Code §2923.7 against B of A; (6) Promissory Estoppel against Deutsche Bank; (7) violation of California Civil Code § 2924.11 against Nationstar; (8) violation of California Civil Code §2924.17 against Deutsche Bank and Nationstar; and (9) Declaratory Relief.  Defendant B of A has answered the FAC.  Defendants Deutsche Bank and Nationstar (the "Moving Defendants") have filed a Motion to Dismiss all of the claims against them in the FAC.  This Court held a hearing on the motion on December 22, 2015.  For the reasons stated during the hearing and herein, the motion is granted in part and denied in part.

## II.      Factual Background

Plaintiff is the owner of a property located at 811 Page Street in San Francisco (the "Property") that contains no more than four dwelling units.  FAC at ¶ 11.  Plaintiff alleges that the

United States District Court
Northern District of California

Property is her principal residence.  Id.  In or around January 2006, Plaintiff was solicited by Countrywide regarding a refinance of her mortgage loan for the Property, and Plaintiff negotiated a 40-year adjustable rate mortgage.  FAC at ¶ 12.  Plaintiff believed that the refinance was in the process of being finalized, but later learned she would not obtain a refinance on the original terms and was offered a refinance on less beneficial terms in April 2006.  FAC ¶ 14-15.  Plaintiff accepted the offer due to pressure from construction companies working on the Property.  FAC ¶ 15.  Around May 2006, Plaintiff entered into a refinance agreement whereby she obtained a $1.6 million loan secured by a Deed of Trust and began making payments pursuant to the new loan terms.  FAC at ¶ 15-18; Defendants' RJN, Ex. A.  The Deed of Trust was subject to a "1-4 Family Rider" recorded with the Deed of Trust which, among other things, required Plaintiff to "maintain insurance against rent loss" and deleted reference to the section of the Deed of Trust entitled "Borrower's Occupancy of the Property."  RJN Ex. A at pp. 18-22.  The FAC refers to "gross rental income" twice.  FAC ¶¶ 30, 34.

In around April 2008, Plaintiff alleges that Countrywide improperly set up an escrow account and paid property taxes on her Property, despite the fact that the taxes were not yet due.  FAC ¶ 18.  Thereafter, Plaintiff pursued a loan modification with Countrywide and then B of A.  FAC at ¶ 19.  Plaintiff was unable to obtain a modification due to a delay in processing application materials and erroneous claims that Plaintiff failed to supply application materials.  FAC ¶ 19.  In early 2012, Plaintiff learned that her loan was one that might benefit from the terms of the National Mortgage Settlement ("NMS") to which B of A had agreed.  FAC at ¶ 20-21.  Around June 2012, Plaintiff applied for a loan modification with B of A.  FAC at ¶ 23.  Plaintiff then learned that B of A manipulated her income in considering her for the NMS modification and failed to correct the error on Plaintiff's account.  FAC at ¶ 24-25.

On or about October 2, 2012, Plaintiff communicated with B of A and was "repeatedly and unequivocally advised [] that Bank of America intended to modify Plaintiff's loan in conjunction with the National Mortgage Settlement on terms that would be acceptable to Plaintiff."  FAC at ¶ 26-27.  In February 2013, Plaintiff received a modification offer.  FAC at ¶ 29.  Plaintiff's contact at B of A informed her that the offer was not compliance with the NMS because her monthly

payment exceeded gross rental income from the property, and appealed the offer on Plaintiff's behalf. FAC ¶ 29-32. There is no allegation that Plaintiff accepted the modification offer.

In May 2013, Plaintiff spoke to a B of A Appeals Manager and submitted additional information. FAC ¶ 33. In June 2013 Plaintiff received a second NMS modification offer, but Plaintiff believed that this offer also did not comply with the NMS and appealed the offer without accepting it in June 2013. FAC ¶ 34-37. In August 2013, while Plaintiff's appeal was pending, she learned that servicing of her loan would transferred to Nationstar effective September 1. FAC ¶ 38-39. Plaintiff met with B of A representatives in late August to discuss her modification, and was told that the terms of the second modification offer were erroneous and she would receive a loan modification with payments totaling $3,000.00 per month and the arrearages and advances that had accumulated for the loan would be written off of the loan. FAC at ¶ 41. B of A representatives also told her they would try to convince others to stop the transfer of her loan to Nationstar during the appeal process, but this effort was ultimately unsuccessful. FAC ¶ 43-44. In reliance on B of A's representations, Plaintiff continued construction projects for the property. FAC ¶ 42.

Nationstar did not process Plaintiff's appeal or continue to review her account for modification. FAC ¶ 45-46. Instead, Nationstar has made inflated demands for payment. FAC ¶ 51-55. In March 2015, Nationstar recorded a Notice of Default showing an amount in arrears of approximately $800,000 dating back to December 2008. FAC ¶ 47; Def.'s RJN Ex. B. Plaintiff alleges that throughout the relevant time period, B of A and Nationstar serviced Plaintiff's loan on behalf of Deutsche Bank. FAC ¶ 48.

## III.     Legal Standard

### a.     Motion to Dismiss

A complaint will survive a Rule 12(b)(6) motion to dismiss if it contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The reviewing court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." Lazy Y Ranch LTD v. Behrens, 546 F.3d

United States District Court
Northern District of California

3

1    580, 588 (9th Cir. 2008).  A court need not, however, accept as true the complaint's "legal

2    conclusions."  Iqbal, 556 U.S. at 678.  "While legal conclusions can provide the framework of a

3    complaint, they must be supported by factual allegations."  Id. at 679.  Thus, a reviewing court

4    may begin "by identifying pleadings that, because they are no more than conclusions, are not

5    entitled to the assumption of truth."  Id.

6         **B.    Judicial Notice**

7         A court need not "accept as true allegations that contradict matters properly subject to

8    judicial notice."  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  Under

9    Federal Rule of Evidence 201(b), a "judicially noticed fact must be  one not subject to reasonable

10   dispute in that it is either: (1) generally known within the territorial jurisdiction of the trial court;

11   or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot

12   reasonably be questioned."  Furthermore, a court "shall take judicial notice if requested by a party

13   and supplied with the necessary information."  See Fed. R. Evid. 201(d); Mullis v. United States

14   Bank, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987).

15        Here, both sides request that the Court take judicial notice of various documents, and

16   neither side challenges each other's submission.  Specifically, Defendant requests that the Court

17   take judicial notice of the Deed of Trust on the Property recorded on May 8, 2006, and a Notice of

18   Default and Election to Sell recorded on March 3, 2015.  See Def.'s Request for Judicial Notice

19   Exs. A, B.  Plaintiff requests that the Court take judicial notice of the Corporate Assignment of

20   Deed of Trust that transferred  Plaintiff's loan to Deutsche Bank.  See Pl.'s Request for Judicial

21   Notice.  All of these documents are publicly recorded documents and their authenticity "can be

22   accurately and readily determined from sources whose accuracy cannot be reasonably questioned."

23   Fed. R. Evid. 201; see also Chaghouri v. Wells Fargo Bank, N.A., No. 14-CV-01500-YGR, 2015

24   WL 65291, at *1 (N.D. Cal. Jan. 5, 2015) (taking judicial notice of publicly recorded documents).

25   Therefore, the Court takes judicial notice of and considers these documents in addition to the

26   allegations of the FAC.

27   **IV.    Discussion**

28        The FAC asserts four claims against the Moving Defendants:  Promissory Estoppel against

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1  Deutsche Bank; violation of California Civil Code § 2924.11 against Nationstar; violation of

2  California Civil Code §2924.17 against Deutsche Bank and Nationstar; and Declaratory Relief.

3        **A.**    **Claims 1 through 5**

4        Claims One through Five were asserted only against B of A, not against either of the

5  Moving Defendants, and are not at issue in connection with this motion.

6        **B.**    **Claims 7 and 8 for Violation of Civil Code Sections 2924.11 and 2924.17**

7        The Moving Defendants move to dismiss Claims 7 and 8 on the basis that Plaintiff's loan

8  falls outside the scope of the Homeowners Bill of Rights, the basis for the claims under California

9  Civil Code sections 2924.11 and 2924.17.  Specifically, they argue that judicially noticeable

10  documents show that the Property was not Plaintiff's principal residence, and therefore she cannot

11  sue for statutory violations relating to "owner-occupied" property despite her allegation that she

12  occupied the Property.

13        Section 2924.11(g) provides: "If a borrower has been approved in writing for a first lien

14  loan modification or other foreclosure prevention alternative, and the servicing of that borrower's

15  loan is transferred or sold to another mortgage servicer, the subsequent mortgage servicer shall

16  continue to honor any previously approved first lien loan modification or other foreclosure

17  prevention alternative, in accordance with the provisions of the act that added this section."

18  Section 2924.15 in turn provides that section 2924.11 "shall apply only to first lien mortgages or

19  deeds of trust that are secured by owner-occupied residential real property containing no more

20  than four dwelling units."  See Civ. Code § 2924.15(a).  "Owner-occupied" means that the

21  "property is the principal residence of the borrower and is security for a loan made for personal,

22  family, or household purposes."  Id. (emph. added).  Section 2924.17 provides: "[a] declaration

23  recorded pursuant to Section 2923.5 or ... pursuant to Section 2923.55, a notice of default . . .

24  recorded by or on behalf of a mortgage servicer in connection with a foreclosure . . . shall be

25  accurate and complete and supported by competent and reliable evidence."  Civ. Code §

26  2924.17(a). Civil Code sections 2923.5 and 2923.55 state that they "apply only to mortgage or

27  deeds of trust described in Section 2924.15 [i.e., owner-occupied residential real property

28  containing no more than four dwelling units]."  See Civ. Code§§ 2923.5([), 2923.55(h).

United States District Court
Northern District of California

1    To argue that the Property was not "owner-occupied" and was not Plaintiff's principal

2    residence, Defendants rely on a 1-4 Family Rider recorded with the Deed of Trust that required

3    Plaintiff to "maintain insurance against rent loss" and assign and transfer to Lender all rents and

4    revenues of the Property while deleting the reference to the section of the Deed of Trust entitled

5    "Borrower's Occupancy of the Property."  See RJN Ex. A at pp. 18-22.  Defendants argue that the

6    only purpose for executing the Rider had to be to effectuate an agreement that the Property was to

7    be a rental property and not Plaintiff's principal residence.  Plaintiff does not dispute that she

8    signed this Rider, or that it allows her to rent the Property and not reside there.  However, the FAC

9    clearly alleges that "the Property is Plaintiff's principal residence" and the Rider does not

10   necessarily contradict that allegation.  While Plaintiff was allowed to rent some or all of the

11   Property due to the Rider, and rented out at least some of it, taking the allegations of the FAC as

12   true as it must, the Court cannot conclude at this point that Plaintiff did not also occupy the

13   Property as her principal residence at this stage of the litigation.  This portion of the Motion is

14   DENIED.

15          **2.      Claims 6 and 7: Attempt to Enforce the National Mortgage Settlement**

16          The Moving Defendants argue that Claims 6 (promissory estoppel) and 7 (California Civil

17   Code § 2924.11) are premised on allegations that the two loan modifications offered in 2013 did

18   not conform with the NMS, and that Plaintiff is improperly attempting to enforce the NMS.

19   Moving Defendants cite paragraphs 29-30, 32, 35, 60, 63, 65, 67, 79, 83, 98, 100, and 102 of the

20   FAC, all of which reference the NMS.  Moving Defendants correctly argue that individual third-

21   parties such as Plaintiff lack standing to enforce the NMS.  See, e.g., Lawrence v. Wells Fargo

22   Bank, N.A., 2014 WL 2705425, at *6 (N.D. Cal., June 13, 2014) ("The court agrees with Wells

23   Fargo that plaintiff has no standing to enforce the National Mortgage Settlement consent

24   judgment. Numerous courts have held that individual borrowers are merely incidental

25   beneficiaries of the National Mortgage Settlement, and so have no right to bring third-party suits

26   to enforce the consent judgment."); Jurewitz v. Bank of America, 938 F. Supp. 2d 994, 997-998

27   (S.D. Cal. 2013); Fontaine v. Bank of Am., N.A., 2015 WL 128067, at *8 (S.D. Cal. 2015)

28   ("Plaintiff does not have standing to enforce the terms of the NMS Consent Judgment").

1    However, Plaintiff's claims do not appear to be an improper attempt to enforce the NMS.

2    Instead, she alleges that Nationstar violated California Civil Code § 2924.11 by refusing to honor

3    her pending appeal of the modification that was previously offered to her.  FAC ¶¶ 129-131.  She

4    alleges that both Moving Defendants violated § 2924.17 by making inflated demands for payment

5    and recording a Notice of Default based on inflated demands for payment without reviewing

6    accurate and reliable evidence.  FAC ¶ 136.  While the FAC references the NMS many times, it

7    does so as part of the background and foundation for Plaintiff's direct claims against the Moving

8    Defendants based on actions taken specific to Plaintiff.  Therefore, these statutory claims are not

9    dismissed.

### 3.    Promissory Estoppel Against Deutsche Bank

11    The Moving Defendants next seek dismissal of Claim 6 for promissory estoppel claim

12    against Deutsche Bank.  The elements of a promissory estoppel claim are: "(1) a promise clear and

13    unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance

14    must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured

15    by his reliance."  Advanced Choices, Inc. v. State Dept. of Health Services, 182 Cal.App.4th 1661,

16    1672 (2010).  Plaintiff's promissory estoppel claim is based on allegations that during a meeting

17    in August 2013 to discuss her pending appeal of a modification offer, B of A representatives told

18    her that the terms of her modification offer were too high, acknowledged that the offer included an

19    overstated loan balance and property value, and promised that Plaintiff would receive a

20    modification offer with a $3,000 monthly payment and that all accumulated arrearages would be

21    written off.  FAC ¶ 117.  Plaintiff alleges that in reliance on these statements by B of A

22    representatives, she continued construction on the Property to her detriment.  FAC ¶¶ 118-121.

23    Plaintiff further alleges that B of A serviced her loan on behalf of Deutsche Bank and acted as its

24    agent.  FAC ¶¶ 115-16, 123-24.

25    First, the Moving Defendants argue that Plaintiff's claim for promissory estoppel against

26    Deutsche Bank is barred by the statute of frauds.  The California statute of frauds provides that

27    certain types of contracts, including mortgages and deeds of trust, are invalid unless the contract or

28    some note or memorandum of the contract is in writing and subscribed by the party to be charged

United States District Court
Northern District of California

7

or by the party's agent. Cal. Civ. Code §§ 1624, 2922.  An agreement to modify a contract subject to the statute of frauds is also subject to the statute of frauds.  Seacrest v. Security Nat'l Mortgage Loan Trust 2002-2, 167 Cal.App.4th 544, 553 (2008).   There are no allegations that the representations made by B of A representatives to Plaintiff in August 2013 were ever put in writing.

Plaintiff does not dispute that the representations were oral and would otherwise fall within the statute of frauds, but argues that courts "have the power to apply equitable principles to prevent a party from using the statute of frauds where such use would constitute fraud." Chavez v. Indymac Mortgage Servs., 219 Cal. App. 4th 1052, 1057-58 (2013) (quoting Juran v. Epstein, 23 Cal.App.4th 882, 895 (1994)). "'The doctrine of estoppel has been applied where an unconscionable injury would result from denying enforcement after one party has been induced to make a serious change of position in reliance on the contract or where unjust enrichment would result if a party who has received the benefits of the other's performance were allowed to invoke the statute.'" Id. (quoting Redke v. Silvertrust, 6 Cal.3d 94, 101 (1971)).  Generally, "four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." Id. (quoting Driscoll v. City of Los Angeles, 67 Cal.2d 297, 305 (1967)).  Whether a party is precluded from using the statute of frauds defense in a given case is generally a question of fact.  Id.

Plaintiff relies on Chavez v. Indymac Mortgage Servs., 219 Cal. App. 4th 1052, 1057-58 (2013), a mortgage case where the court found it to be a close question whether the plaintiff had adequately alleged equitable estoppel, but ultimately held that the plaintiff had adequately alleged sufficient facts to preclude dismissal of a claim involving an alleged loan modification promise due to the statute of frauds.  Plaintiff contends that her allegations that in reliance on Bank of America's representations she continued construction projects on the Property are sufficient and it would be inequitable to apply the statute of frauds.  However, Chavez is factually distinguishable

8

in that the plaintiff in that case received a *written* trial plan and modification offer, timely returned the modification agreement and complied with its terms, continued making payments, and believed she had a permanent modification but the defendant then returned her payment and sold the property. Id. at 1055-56. Here, in contrast, Plaintiff's claim is based entirely on an admittedly oral promise that differed from the written modification offer that she was in the process of appealing.

Further, in Chavez, the court found that the plaintiff had alleged that it would be inequitable to enforce the statute of frauds where, based on review of the written trial plan and modification agreement in tandem, it appeared that the defendant had concluded that the plaintiff qualified for modification and the plaintiff detrimentally changed her position by signing the modification agreement containing unfavorable terms. In contrast, Plaintiff here does not allege that she was induced to enter into an unfavorable modification agreement. Here, her "detriment" is based entirely on an allegation that she continued construction on the Property, but it is unclear how this construction was related to the B of A representations. As pled, the FAC's allegations to support an equitable estoppel defense to the statute of frauds are insufficient.

Second, the FAC currently contains insufficient allegations of actual or ostensible agency between B of A and Deutsche Bank to support a claim for promissory estoppel against Deutsche Bank based on representations made by B of A. An agency is actual when the "agent is really employed by the principal," and actual authority exists when the principal allows the agent to believe that he has authority to act on its behalf. See Civ. Code§ 2299, § 2316. Ostensible authority is such "as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess." Civ. Code § 2317. California Civil Code § 2330 further provides that: "An agent represents his principal for all purposes within the scope of his actual or ostensible authority, and all the rights and liabilities which would accrue to the agent from transactions within such limit, if they had been entered into on his own account, accrue to the principal."

Plaintiff alleges that Deutsche Bank was the owner of the loan entitled to payments and principal balance, but B of A serviced her loan on behalf of Deutsche Bank and acted as its agent.

FAC ¶¶ 7, 48, 115-16, 123-24.  Additionally, on or around June 2, 2011, an Assignment of Deed of Trust was recorded reflecting that Deutsche Bank had acquired the beneficial interest in the Deed of Trust for Plaintiff's loan.   See RJN Ex. A.  Despite these conclusory allegations of an agency relationship, there are no allegations that Deutsche Bank employed B of A or authorized B of A to write off arrearages or make other promises on its behalf to support an actual agency theory, or that B of A (or anyone else) led Plaintiff to believe that it was acting on behalf of Deutsche Bank or that Deutsche Bank had anything to do with the representations to support ostensible agency.  Without more, Plaintiff's allegations of agency are insufficient.

Third, there are insufficient allegations of a clear and unambiguous promise to support the promissory estoppel claim.  The FAC alleges that B of A representatives promised Plaintiff that she would receive a loan modification with a $3,000 monthly payment and accumulated arrearages and advances would be written off.  FAC ¶ 117, 119.  This vague promise of modification and write-off – without any detail as to the modification terms, interest rate, principal balance, length of loan, escrow items, or amounts to be written off – is insufficient to state a claim for promissory estoppel.   See Laks v. Coast Fed. Sav. & Loan Assn., 60 Cal. App. 3d 885, 891 (1976) (finding that absence of "payment schedules for each loan, identification of the security, prepayment conditions, terms for interest calculations, loan disbursement procedures, and rights and remedies of the parties in case of default" supported conclusion that offer was conditional and could not support promissory estoppel claim).

Fourth, the FAC contains insufficient allegations of reliance because there is no allegation that Plaintiff substantially changed her position by act or forbearance on the promise.  Her contention that she continued making costly property improvements and repairing and renovating the property (FAC ¶¶ 118, 120-21) is untethered to any alleged promise for a loan modification or write-off, and instead appears to relate to the regular obligations of a property owner.  There is no allegation of when the improvements or repairs were planned, what they entailed, and whether they were necessary and thus there is a "missing link" between the allegation that B of A representatives assured Plaintiff that she would eventually get a loan modification for a $3,000 monthly payment and other write-offs and her decision to continue with repair and improvement

1    projects.

2         For all of the foregoing reasons, the Moving Defendants' Motion to Dismiss Plaintiff's

3    claim for promissory estoppel against Deutsche Bank is granted with leave to amend.  As stated

4    during the hearing, Plaintiff's amended pleading is due no later than January 12, 2016.

5                    **4.      Violation of Civil Code § 2924.11 Against Nationstar**

6         Section 2924.11(g) provides that:  "If a borrower has been approved in writing for a first

7    lien loan modification or other foreclosure prevention alternative, and the servicing of that

8    borrower's loan is transferred or sold to another mortgage servicer, the subsequent mortgage

9    servicer shall continue to honor any previously approved first lien loan modification or other

10   foreclosure prevention alternative, in accordance with the provisions of the act that added this

11   section."  This provision only applies to owner-occupied residential real property.  Cal. Civ. Code

12   § 2924.15.  As discussed above, this claim will not be dismissed outright because of the 1-4

13   Family Rider exempting Plaintiff from the obligation to reside in property.

14        The Moving Defendants also argue that the claim should be dismissed because Plaintiff

15   alleges that "at the time Nationstar obtained servicing of Plaintiff's loan, Plaintiff's loan was in

16   review for modification," (FAC ¶ 130) and Nationstar violated Section 2924.11 by "refusing to

17   consider Plaintiff's appeal of the June 2013 trial offer and honor review of the trial plan and loan

18   for a NSM modification."  FAC ¶ 128.  Moving Defendants argue that there is no allegation that

19   Nationstar violated Section 2924.11 because the allegation is that it failed to consider her *appeal*

20   of a modification offer that was pending at the time of transfer, not an approved modification offer

21   that she had accepted or was in compliance with.

22        Plaintiff counters that Nationstar violated Section 2924.11 by failing to continue review of

23   her appeal, and because she was appealing the terms of an approved first lien loan modification

24   offer – as opposed to a loan modification denial – the eventual outcome would not have been

25   denial in any event so it was as if she were in continuing review for a loan modification offer.

26   Neither side cites any case law, and the Court has not located any, addressing whether a pending

27   appeal of a modification offer falls within Section 2924.11.  However, unlike an appeal of a

28   modification *denial*, here Plaintiff had been previously approved in writing for a modification and

United States District Court
Northern District of California

11

was simply appealing to try to get better terms.  Thus, at least at the pleading stage, Plaintiff's situation appears to be somewhat more akin to an approved modification which must be honored following loan transfer pursuant to Section 2924.11.  Therefore, this claim, while a close question, will not be dismissed at the pleading stage.

### 5.    Violation of Civil Code § 2924.17 Against Nationstar and Deutsche Bank

Section 2924.17 provides that:

(a) A declaration recorded pursuant to Section 2923.5 or, until January 1, 2018, pursuant to Section  2923.55, a notice of default, notice of sale, assignment of a deed of trust,  or substitution of trustee recorded by or on behalf of a mortgage servicer in  connection with a foreclosure subject to the requirements of Section 2924, or a declaration or affidavit filed in any court relative to a foreclosure proceeding shall be accurate and complete and supported by competent and reliable evidence.

(b) Before recording or filing any of the documents described in subdivision (a), a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

Plaintiff alleges that the Moving Defendants violated this provision by recording a Notice of Default that was inaccurate and based on "improper and overinflated demands" without reviewing competent and reliable evidence to substantiate the default.  FAC ¶ 136.  Plaintiff believes the amounts were "overinflated" because the amount demanded was more than the amount originally borrowed.  FAC ¶ 51-53.  She argues that she had made more than the minimum monthly payments on her loan so the principal balance should not have been rising.  See FAC ¶ 50.

Plaintiff relies on Penermon v. Wells Fargo Bank, N.A., 47 F. Supp. 3d 982, 997-98 (N.D. Cal. 2014), where a court held that a plaintiff stated a valid Section 2924.17 claim where the notice of default stated that payment had not been made since December 1, 2012, but the plaintiff alleged that she made payments until February 2013.  Further, the plaintiff in Penermon alleged that a bank representative told her she owed $3,000 but a month later the notice of default stated that she owed over $9,000.  Id.  The court rejected the defendant's argument that the plaintiff's allegations were conclusory, and held that "the substantial increase in the amount of Plaintiff's purported arrears in the [Notice of Default] could be explained by Defendant's failure to verify the

amount with competent and reliable evidence" and that the dispute about when payments stopped was a fact question for summary judgment.

However, in <u>Penermon</u> there was a factual dispute as to when the plaintiff stopped making payments and the propriety of default, whereas here Plaintiff does not dispute that she stopped making payments in 2008 and that default was otherwise proper.  Further, the <u>Penermon</u> court relied heavily on the fact that a representative of the defendant told the plaintiff that the amount owed was $3,000, but a month later a notice of default contained an amount three times higher. Here, there is no allegation that Plaintiff was ever told that her payoff amount differed from the amount in the Notice of Default, and in fact the FAC alleges that amounts similar to the amount listed in the Notice of Default were also contained in a welcome letter, debt validation letter, and subsequent statements.  FAC ¶ 52-54.  The fact that the amount owed was more than the amount borrowed does not necessarily reflect an overinflated demand unsupported by competent and reliable evidence, where Plaintiff does not dispute that she has been in default since 2008 and was subject to arrearages, interest and fees since that time.  <u>See</u> RJN Ex. A, B.  Furthermore, Plaintiff's loan was subject to an adjustable rate rider, which expressly stated that the principal to repay could be higher than the amount borrowed.  FAC ¶ 15; RJN Ex. A at p. 24.  Without further explanation in the FAC, Plaintiff's conclusory allegation that the Moving Defendants failed to review competent and reliable evidence based solely on the amount they claim she owed is insufficient to state a claim for violation of California Civil Code § 2924.17.  The Moving Defendants' motion to dismiss this claim is granted with leave to amend.  As stated during the hearing, Plaintiff's amended pleading is due no later than January 12, 2016.

### 6.     Declaratory Relief

Plaintiff's Ninth claim for Declaratory Relief is based on allegations that Defendant Nationstar made improper and overinflated demands for payment because a 2013 "welcome letter" stated a balance of $1,724,536.98 and $532,526.98 in arrears, while a "debt validation letter" dated the same day listed the same balance of $1,724,536.98 but only $420,946.72 in arrears (a $111,352.41 difference).  FAC ¶¶ 142-46.  Plaintiff does not allege which of these amounts is correct, or that either amount is incorrect, but seeks some unspecified declaratory relief based on

these allegations.  FAC ¶ 149.  This claim is dismissed with prejudice because declaratory relief is a remedy rather than a cause of action.  See Rivera v. E. Bay Mun. Util. Dist., 2015 WL 6954988, at *9 (N.D. Cal. Nov. 10, 2015) (citing Morongo Band of Mission Indians v. Cal. State Bd. of Equalization, 858 F.2d 1376, 1382-83 (9th Cir. 1988)) ("Declaratory relief is a remedy, not a substantive claim. )".

 

**IT IS SO ORDERED.**

Dated:  January 8, 2016

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge