UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA MARIE SNYDER,<br>Plaintiff,<br>v.<br>BANK OF AMERICA, N.A., et al.,<br>Defendants. | Case No. 15-cv-04228-KAW<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 215 |

On September 17, 2015, Plaintiff Pamela Marie Snyder filed this case against Defendant Bank of America, N.A., asserting that Defendant mishandled her loan. (*See* Third Amended Compl. ("TAC") ¶ 1, Dkt. No. 47.) On January 26, 2018, Judge Laporte granted in part and denied in part Defendant's motion for summary judgment, such that the only remaining claims are for "intentional and negligent misrepresentation claims with respect to written representations that the loan modification offers were in compliance with the National Mortgage Settlement." (Summ. J. Ord. at 29, Dkt. No. 151.)[1] The case was subsequently reassigned to the undersigned. (Dkt. No. 176.)

On April 5, 2019, Defendant filed the instant motion for summary judgment. (Def.'s Mot. for Summ. J., Dkt. No. 215.) The Court deemed this matter suitable for disposition without hearing pursuant to Civil Local Rule 7-1(b). (Dkt. No. 250.) Having considered the parties' briefing and relevant legal authority, the Court DENIES Defendant's motion for summary judgment.

---

[1] Judge Laporte also granted former Defendant Nationstar Mortgage, LLC's ("Nationstar") motion for summary judgment in full. (Summ. J. Ord. at 28.)

## I. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when, after adequate discovery, there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law. *Id.*; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Southern Calif. Gas. Co. v. City of Santa Ana,* 336 F.3d 885, 888 (9th Cir. 2003).

On an issue where the nonmoving party will bear the burden of proof at trial, the moving party may discharge its burden of production by either (1) "produc[ing] evidence negating an essential element of the nonmoving party's case" or (2) after suitable discovery, "show[ing] that the nonmoving party does not have enough evidence of an essential element of its claim or defense to discharge its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000); *see also Celotex*, 477 U.S. at 324-25.

Once the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 250. "A party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001). "Instead, the non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial." *Id.* (citations and quotations omitted). The non-moving party must produce "specific

2

evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NMS Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of material fact to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Electronics Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

In deciding a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson,* 477 U.S. at 255; *Hunt v. City of Los Angeles,* 638 F.3d 703, 709 (9th Cir. 2011).

## II. DISCUSSION

Following Judge Laporte's summary judgment ruling, the only remaining claims are intentional and negligent misrepresentation claims related to two loan modification offers.[2] (Summ. J. Ord. at 28-29.) On February 22, 2013, Defendant offered Plaintiff a Trial Payment Plan ("TPP"), which required that Plaintiff make three payments of $7,640.23 beginning on April 1, 2013, and ending on June 1, 2013. (*Id.* at 3.) If Plaintiff successfully completed the TPP, Plaintiff would have received a principal reduction on her loan of $1,003,478.57. (*Id.*) Plaintiff did not make any payments under the February 22, 2013 TPP. (*Id.*) On May 15, 2013, Plaintiff received a letter from Defendant, stating that Plaintiff's loan had been removed from consideration for a National Mortgage Settlement ("NMS") loan modification. (*Id.*)

On May 28, 2013, Plaintiff appealed the denial of the NMS loan modification. (Summ. J. Ord. at 3.) On June 4, 2013, Plaintiff was offered a second TPP, which required that Plaintiff make three payments of $6,200 beginning on July 1, 2013, and ending on September 1, 2013. (*Id.*) Successful completion of the TPP would have resulted in a principal reduction of $1,003,475.57. (*Id.*) Again, Plaintiff did not make any payments under the June 4, 2013 TPP. (*Id.*) Plaintiff appealed the second TPP, but was informed by letter on July 25, 2013 that her appeal was closed because she had withdrawn her request for a loan modification by telephone on July 11, 2013. (*Id.* at 3-4.)

---

[2] In general, facts are taken from the "Undisputed Factual Background" section of Judge Laporte's summary judgment order.

3

Defendant now moves for summary judgment on these remaining two claims. Defendant primarily offers new evidence to argue that both loan modifications were in compliance with the NMS. (Def.'s Mot. for Summ. J. at 2-3, 5-6, 8.) Otherwise, as discussed below, many of Defendant's arguments were already raised and addressed by Judge Laporte's summary judgment order. (*See* Pl.'s Opp'n at 11, Dkt. No. 242.)

### A. Standing

First, Defendant argues that Plaintiff's claims must be dismissed because she does not have standing to enforce the terms of the NMS. (Def.'s Mot. for Summ. J. at 11-12.) In the summary judgment order, however, Judge Laporte already rejected this argument, explaining:

> Plaintiff does not have standing to enforce the terms of the NMS. However, that is **not dispositive of her claims in this case**. As this Court previously explained when rejecting this argument in Defendants' first motion to dismiss, "while the complaint references the NMS many times, it does so as part of the background and foundation for Plaintiff's direct harms against Defendants based on actions taken specific to Plaintiff." Dkt. No. 29, at 7. Plaintiff has brought claims against Bank of America . . . under the common law and state statutory law. **Her standing to bring challenges under the NMS is irrelevant to the merits of those claims**.

(Summ. J. Ord. at 9 (internal modifications omitted, bold added).)

In short, Judge Laporte already found that Plaintiff is not seeking to enforce the terms of the NMS, and thus her standing is irrelevant to the misrepresentation claims. Plaintiff's misrepresentation claims are not based on her entitlement to an NMS-compliant loan modification, but on whether Defendant *misled* Plaintiff about offering her an NMS-compliant loan modification. Thus, this is not a grounds for granting summary judgment.

### B. Misrepresentation

Second, Defendant contends that Plaintiff's claims fail because there was no misrepresentation, as Defendant did in fact comply with the NMS. (Def.'s Summ. J. Mot. at 12-14.) In support, Defendant states that in accordance with the NMS, it "developed the Bank of America Special Modification Program . . . ." (Littlejohn Decl. ¶ 14.) Under these guidelines, the income of an applicant who received rental income for a non-owner occupied property was determined by multiplying by 2.5 the greatest of: (1) the Original Principal Balance of the

4

Property x 0.03 / 12 (the "Minimum Rental Yield"), (2) the Appraised Value of the Property x 0.04 / 12 (the "Minimum Rental Yield with Appraisal"), or (3) the Verified Rent on the Property. (Littlejohn Decl. ¶ 21.) All other income sources were disregarded. (Littlejohn Decl. ¶ 22.) Because Defendant found that Plaintiff did not live on the Subject Property, and that Plaintiff collected $8,000 in rent from the Subject Property, it calculated Plaintiff's income as $20,000, or 2.5 x $8,000 in verified rent, as the Verified Rent was greater than the Minimum Rental Yield or the Minimum Rental Yield with Appraisal.[3] (Littlejohn Decl. ¶¶ 20, 23.)

After calculating an applicant's income, Defendant would determine a debt to income ratio ("DTI") which would fall in the 25-42% range. (Littlejohn Decl. ¶ 15.) Based on Defendant's calculation of Plaintiff's income, therefore, a monthly payment within this DTI range would be between $5,000 and $8,400. Defendant argues that because both TPPs fell within this 25-42% range, it had complied with the NMS and therefore summary judgment should be granted. (Def.'s Summ. J. Mot. at 14.)

Defendant's argument, however, assumes that compliance with the guidelines automatically results in compliance with the NMS. Moreover, as with the prior motion for summary judgment, Plaintiff presents evidence – specifically an expert declaration by Thomas A. Tarter – that creates a question of fact as to whether the TPPs were in compliance with the NMS. (*See* Summ. J. Ord. at 15.) For example, Mr. Tarter opines that Defendant miscalculated Plaintiff's Verified Income because she was only temporarily not living at the property. (Tarter Decl. at 11, Dkt. No. 242-2.) He also opines that the 2.5 multiplier is arbitrary and not compliant with the NMS. (*Id.* at 11-12.) Mr. Tarter further states that the DTI should have been between 25-31%, per Exhibit I of the NMS. (*Id.* at 14-15.) Finally, Mr. Tarter opines that the NMS required the use of the NPV calculator, also known as the Home Affordable Modification Program ("HAMP") Model v5.01. (*Id.* at 19.) Under this calculator, the monthly net income or loss on a rental property would be calculated as 75% of the monthly gross rental income, reduced by the

---

[3] The Minimum Rental Yield was $4,000 ($1.6 million original principal balance x 0.03 / 12), and the Minimum Rental Yield with Appraisal was $3,667 ($1.1 million December 2012 appraised value of the property x 0.04 / 12).

5

post-modification mortgage monthly mortgage payment. Net income and rental loss from other sources would be added to the borrower's monthly gross income. (*Id.*) Based on that, Mr. Tarter found that Plaintiff's gross income was $8,107, and that 31% of that gross income would be $2,513. (*Id.* at 22.) Thus, the maximum monthly payment for a compliant TPP would be $2,513, far below the $7,460 and $6,200 offered by Defendant.[4] (*Id.*)

In opposing Mr. Tarter's opinion, Defendant raises several arguments. First, Defendant argues that Mr. Tarter incorrectly applies HAMP income calculations. (Def.'s Mot. for Summ. J. at 15-17.) Defendant argues that the programs and requirements "are entirely different," but does not explain how they are different or make any showing that the NMS does not require the use of the HAMP NPV calculator in this case. Thus, there remains a factual dispute as to whether using the HAMP calculator is required to comply with the NMS in these particular circumstances.

Second, Defendant contends Mr. Tarter failed to consider the representations in Plaintiff's loan modification application, such as whether or not Plaintiff lived on the Subject Property. (Def.'s Mot. for Summ. J. at 17.) In his current declaration, however, Mr. Tarter does explain his analysis that Plaintiff was only temporarily not living at the Subject Property. (*See* Tarter Decl. at 11.) This goes to his analysis as to why Defendant miscalculated the TPP.

Third, Defendant argues that the Tarter declaration is inadmissible because it does not comply with Local Rule 5-1(i)(3), which requires that when electronically filing documents with a signatory who is not an ECF user, "the filer of the document shall attest that concurrence in the filing of the document has been obtained from each of the other Signatories, which shall serve in lieu of their signatures on the document." (Def.'s Reply, at 4, Dkt. No. 248.) It is not clear Local Rule 5-1(i)(3) applies to declarations, rather than documents such as stipulations or joint case management conference statements that require the signatures of multiple attorneys or parties. Further, to the extent Defendant suggests Mr. Tarter did not read his declaration before signing it,

---

[4] The Court notes that Judge Laporte already found that Mr. Tarter's "discussion of the NPV's application to Plaintiff's case was well organized and systematic," such that "his conclusion is not based on his personal opinions and speculation rather than on a systematic assessment on the issue. It may be that Mr. Tarter's conclusion is incorrect, but that would go to the weight that his conclusion should be given, not its admissibility." (Summ. J. Ord. at 11 (internal quotation omitted).)

the declaration states that it was made and executed by Mr. Tarter on November 7, 2019 in Northridge, California. (*See* Tarter Decl. at 1, 25.) This is sufficient, particularly at the summary judgment stage. *See Hughes v. United States*, 953 F.2d 531, 543 (9th Cir. 1992) ("Rule 56 permits the use of affidavits in evaluating a motion for summary judgment. While the facts underlying the affidavit must be of a type that would be admissible as evidence, . . . the affidavit itself does not have to be in a form that would be admissible at trial."); *Lomeli v. Midland Funding, LLC*, Case No. 19-cv-1141-LHK, 2019 U.S. Dist. LEXIS 166151, at *20 (N.D. Cal. Sept. 26, 2019) ("the Court does not focus on the admissibility of the evidence's form, so long as the contents are capable of presentation in an admissible form at trial") (internal quotations omitted).

Fourth, Defendant argues that the Tarter Declaration is inadmissible because it seeks to authenticate documents drafted by other individuals or purported experts, contains inadmissible legal conclusions and hearsay, does not help the understanding of the matter, and improperly opines on Defendant's state of mind. (Def.'s Reply at 5.) Defendant points to specific sections of Mr. Tarter's declaration. (*Id.*) Most of these sections do improperly opine as to Defendant's state of mind, concluding that Defendant's deviations from the NMS requirements is so extreme that it must be intentional fraud. (Tarter Decl. at 11:3-6, 13:8-13, 14:8-10, 14:15-17, 16:11-12, 18:18-19, and 24:17-19.) Mr. Tarter is not an expert on this matter.[5] Likewise, Mr. Tarter's opinion that Defendant's actions caused Plaintiff's damages is a matter outside his area of expertise, in addition to being an inadmissible legal conclusion. (Tarter Decl. at 16:7-8.) Thus, these opinions were not considered by the Court. These opinions, however, are irrelevant to Mr. Tarter's opinion regarding whether Defendant's TPPs comply with the NMS. Such opinions are admissible. (*See* Tarter Decl. at 12:26-28.)

Finally, Defendant objects to Mr. Tarter's opinions on the valuation of the Subject Property. (Def.'s Reply at 8-9.) Again, these opinions are not relevant to the Court's evaluation of Mr. Tarter's opinion, as his calculations of a compliant TPP are based on Plaintiff's rent income, rather than the Subject Property's value. (*See* Tarter Decl. at 22.) Thus, even if the Court

---

[5] As discussed below, however, the disparity creates a question fact as to intent.

7

was not to consider these opinions, there would still be a dispute of material fact as to whether the TPPs were in compliance with the NMS, which in turn goes to whether Defendant made a misrepresentation when it stated that the TPPs were in compliance with the NMS.

**C.  Intent**

Third, Defendant argues that Plaintiff has not produced any evidence that Defendant made an intentional or negligent misrepresentation to Plaintiff, specifically that Defendant was aware that the TPPs were not compliant with the NMS. (Def.'s Mot. for Summ. J. at 18.) In the summary judgment order, however, Judge Laporte already found there was sufficient evidence to create a triable issue on scienter based on Plaintiff's submission of "a declaration attesting to numerous conversations she had with [Defendant]'s agents in which they admitted that the TPP offers were not in compliance with the NMS." (Summ. J. Ord. at 17.)

With respect to intent specifically, Judge Laporte also found that:

> The existence of a genuine dispute of material fact on the issue of intent is further supported by the fact that Bank of America revised an earlier TPP offer to lower the monthly payment after Plaintiff complained that it was not in compliance with the NMS and, yet, according to Plaintiff's expert, the second TPP offer still was not in compliance with the NMS. The inference of intent that arises from that sequence of facts is buttressed by Plaintiff's expert evidence that the TPP offers were about three times higher than he opines they should have been, which is a deviation that is so large as to be intentional or, at least, negligent. Even assuming that the burden on the issue of intent shifted to Plaintiff, she has put forward enough evidence to establish a triable issue of fact.

(Summ. J. Ord. at 18.) Thus, Judge Laporte has already determined that there is a genuine dispute of material fact as to intent based on the significant difference between Defendant's TPP offers and the amount Mr. Tarter opines would be compliant with the NMS. Defendant does not provide any reason for the Court to reconsider Judge Laporte's ruling – and, in fact, does not acknowledge her findings at all. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) ("A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstance such as where the initial decision was clearly erroneous and would work a manifest injustice.") (internal quotation omitted).

**D. Reliance**

Fourth, Defendant contends that Plaintiff cannot establish reliance because she declined both TPPs. (Def.'s Mot. for Summ. J. at 20.) Further, Defendant argues that it had no obligation to modify Plaintiff's loan, so any alleged reliance on such a modification fails as a matter of law. (*Id.*) Defendant also suggests that "Plaintiff's rejection of the TPPs merely required her to comply with her pre-existing Loan obligation, and Plaintiff's 'reliance' cannot be detrimental, as a matter of law." (*Id.* at 21.)

Again, Judge Laporte already decided this issue, finding that "Plaintiff ha[d], albeit just barely, put forward sufficient evidence establishing a triable issue of fact as to her reliance" by providing evidence of sales receipts, progress payment receipts, and handwritten notes regarding construction and the purchase of supplies for ongoing construction at the Subject Property. (Summ. J. Ord. at 19.) Plaintiff had asserted that the construction was done in reliance on Defendant's misrepresentations. (*Id.* at 18-19.) Further, with respect to Defendant's argument that Plaintiff never accepted the TPP and thus could not have relied on Defendant to give her a loan modification, Judge Laporte found:

> Once again, this argument misconstrues Plaintiff's allegations because she alleges that she knew that the TPPs would lead to the permanent loan modification if accepted. Further, she alleges and demonstrates through Bank of America's own documents that the TPPs' terms were substantially similar to what the terms of the permanent loan modification would have been, so she had a reasonable expectation and relied on the understanding that terms of the TPPs should have been NMS-compliant as well but were not. For these reasons, this is not a proper basis for granting summary judgment on the element of reliance.

(Summ. J. Ord. at 19.) Again, Defendant provides no reason for the Court to reconsider Judge Laporte's decision. Indeed, a reasonable juror could conclude that Plaintiff, believing that she was being offered a compliant loan modification (which would eventually lead to reductions in her monthly payments and a $1 million reduction in her principal), continued to invest in major construction on the property. Doing so was arguably to her detriment. If Plaintiff did not believe she would get a compliant loan modification, she may not have made such investments because it would then be unlikely that she would keep the property.

9

### E. Damages

Finally, Defendant argues that Plaintiff did not suffer any ascertainable damages because Plaintiff was already in default. (Def.'s Mot. for Summ. J. at 22.) Further, Defendant contends that Plaintiff was not entitled to any modification regardless. (*Id.*)

As with standing, intent, and reliance, Defendant fails to acknowledge Judge Laporte's prior finding entirely. Judge Laporte found that there was sufficient evidence of damages based on "Plaintiff's deposition testimony that she would have made payments on the loan if she had been given the correct NMS-compliant modification." (Summ. J. Ord. at 20.) Further, to the extent Plaintiff can establish that she relied on Defendant in moving forward with construction, Plaintiff could potentially seek damages for construction she would not have engaged in but for the misrepresentations.

## III. CONCLUSION

For the reasons stated above, the Court DENIES Defendant's motion for summary judgment. The Court REFERS the parties to Judge Hixson for a settlement conference, to occur before the January 15, 2020 pretrial conference. The Court VACATES the December 10, 2019 case management conference.

IT IS SO ORDERED.

Dated: November 21, 2019

_____
KANDIS A. WESTMORE
United States Magistrate Judge